UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARCELORMITTAL PLATE LLC and
ARCELORMITTAL USA LLC,

                Plaintiffs,

v.                                           Civil Case No. 19-13527
                                           Honorable Linda V. Parker

LAPEER INDUSTRIES, INC.,
BRENTWOOD ADVISORY GROUP, LLC,
S&S HOLDINGS, LLC, HOWMARK, LLC,
and 290 MCCORMICK, LLC,[1]

                Defendants,

_____/

HOWMARK, LLC,

                Third-Party Plaintiff,

v.

DANIEL C. SCHREIBER and
DANIEL C. SCHREIBER REVOCABLE
TRUST DATED 4/11/01,

                Third-Party Defendant.

_____/

---

[1] On August 7, 2020, the matter was stayed as to Lapeer Industries, Inc. because it filed for bankruptcy.  (ECF No. 81.)  The parties stipulated to the dismissal of 290 McCormick, LLC on October 29, 2020.  (ECF Nos. 106, 107.)

## OPINION AND ORDER

This lawsuit arises from amounts Lapeer Industries, Inc. ("Lapeer") owed ArcelorMittal Plate, LLC, and the guaranties executed by Brentwood Advisory Group LLC ("Brentwood") and S&S Holdings, LLC ("S&S"), promising to pay Lapeer's debt.  Howmark, LLC and the Daniel C. Schreiber Revocable Trust Dated 4/11/91 ("Schreiber Trust") were the members of Brentwood when the guaranty was executed.  Howmark has filed a third-party complaint against the Schreiber Trust and its trustee, Daniel Schreiber ("Schreiber"), alleging that the execution of the guaranty was unlawful.

The matter is presently before the Court on two dispositive motions.  The first is a motion for summary judgment filed by the Schreiber Trust and Schreiber (ECF No. 67), which has been fully briefed (ECF Nos. 82, 86).  The second is a motion for partial summary judgment filed by ArcelorMittal Plate and ArcelorMittal USA LLC (collectively "ArcelorMittal"), in which they seek summary judgment as to their claims against Brentwood and S&S for breach of contract, only.  (ECF No. 108.)  Brentwood and S&S filed a response to the motion (ECF No. 111), and ArcelorMittal filed a reply (ECF No. 112).  Howmark also filed a response to the motion (ECF No. 113), which ArcelorMittal answered (ECF No. 115).  The Court is dispensing with oral argument with respect to both motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

2

I.      **Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.     Factual and Procedural Background

ArcelorMittal is a mining and steel production company. (ECF No. 18 at Pg ID 592, ¶ 12.) ArcelorMittal Plate manufactured goods for Lapeer, and ArcelorMittal USA, the parent company, processed the payments for the goods. (*Id.* at Pg ID 593, ¶ 14; ECF No. 89-2 at Pg ID 2717, ¶ 4.) Lapeer had been a customer of ArcelorMittal since 2009. (*Id.*)

In 2012, ArcelorMittal agreed to extend credit to Lapeer to enable Lapeer to continue purchasing ArcelorMittal's products. (ECF No. 89-2 at Pg ID 2717, ¶ 5.) As a condition of the credit extension, ArcelorMittal required Brentwood and S&S to guarantee Lapeer's payments. (*Id.*) ArcelorMittal communicated with Lapeer's former Chief Financial Officer, Alan Przekora, to obtain executed copies of the guaranties. (ECF No. 108-1 at Pg ID 3222, ¶ 3.) On or around November 8, 2012, Schreiber executed the guaranties (the "Brentwood Guaranty," the "S&S Guaranty," or collectively "the Guaranties"). (ECF No. 108-1 at Pg ID 3222, ¶ 3; ECF No. 108-2; ECF No. 108-3.)

Pursuant to the Guaranties, Brentwood and S&S guaranteed the full and prompt payment when due of: (i) "the purchase price and all other amounts owing on account of all good and/or services . . . provided by [ArcelorMittal] to

4

[Lapeer];" (ii) "all costs of collect[ing] such purchase price and amounts owing including reasonable attorney[s]'[] fees;" and "(iii) interest on the foregoing at the rate of the lesser of 8% per annum or the highest rate allowed by applicable law." (ECF No. 108-2 at Pg ID 3233, ¶ 1; ECF No. 108-3 at Pg ID 3251, ¶ 1.) Brentwood and S&S agreed to pay the amounts due to ArcelorMittal upon Lapeer's default and ArcelorMittal's demand.  (*Id.*)

When Schreiber signed the Guaranties, Brentwood was a member-managed LLC with two members: Howmark, which owned an 80% interest, and the Schreiber Trust, which owned a 20% interest.  (ECF No. 35-1.)  Howard Gussman, Mark Friedman, and several other individuals and trusts were the members of and managed Howmark.[2]  (ECF No. 113-3 at Pg ID 3846, ¶ 1; ECF No. 115-7 at Pg ID 3919.)  Schreiber was the majority shareholder of Lapeer.  (ECF No. 113-3 at Pg ID 3847, ¶ 10.)  Several individuals and trusts, including Davis Gussman and Mark Friedman, held a 49% interest in Lapeer when the Brentwood Guaranty was signed.  (ECF No. 115-6.)

The Operating Agreement for Brentwood provided that the LLC would be managed by its members in proportion to their unit ownership.  (ECF No. 35-1 at

---

[2] Those other individuals and trusts were: Cheryl Gussman, Michelle Crandell, David Gussman, Lisa Gussman-Zairi, Jennifer Lechter, the Shelby Lauren Gussman Trust, and the Shane Nicole Gussman Trust.  (ECF No. 115-7 at Pg ID 3919.)

Pg ID 1746, § 2.2.)  Members were entitled to vote on various actions, including "a transaction involving an actual or potential conflict of interest between a Member and the Company."  (*Id.* at Pg ID 1757, § 6.2.)  All decisions required at least majority approval, although certain decisions, such as transactions involving an actual or potential conflict of interest between a member and the LLC required the approval of members holding 85% of the units.  (*Id.* §§ 6.1, 6.2.)

Lapeer ordered products from ArcelorMittal between May 2018 and May 2019.  (ECF No. 89-2 at Pg ID 2718, ¶ 6.)  The invoices governing the terms and conditions of those sales provided that if Lapeer failed to timely pay the amounts agreed upon, the full purchase price for all amounts owing would become immediately due and payable.  (ECF No. 108-7 at Pg ID 3733, ¶ 15.)  Lapeer also agreed to reimburse ArcelorMittal for all collection costs, including attorneys' fees and interest.  (*Id.*)

Lapeer failed to pay for the products ordered, which total $3,618,457.02. (ECF No. 108-9 at Pg ID 3745-48.)  Lapeer concedes that it owes this amount to ArcelorMittal.  (ECF No. 89-3 at Pg ID 2768, Resp. No. 3.)  Due to Lapeer's failure to pay the outstanding debt, ArcelorMittal sent demand letters to Lapeer, Brentwood, and S&S on November 8, 2019.  (ECF No. 108-10 at Pg ID 3750-67.) ArcelorMittal has not received any payments towards Lapeer's debt.  (ECF No. 108-1 at Pg ID 3223, ¶ 10.)

In the meantime, on or about October 11, 2019, Howmark transferred its membership interest in Brentwood to Schreiber.  (ECF No. 113-3 at Pg ID 3848, ¶ 12.)  As part of this transaction, Howmark acquired real property commonly known as 3255 John Conley Drive from Brentwood.  (*Id*.)  Around the same time, for approximately $3.8 million, 290 McCormick, LLC purchased a building from Brentwood in which Lapeer's machine shop operations were conducted.  (ECF No. 78-2 at Pg ID 2241, ¶ 15.)  290 McCormick is not associated with Schreiber, Lapeer, or any of their affiliates.

ArcelorMittal filed this lawsuit against Lapeer, Brentwood, S&S, Howmark, and 290 McCormick, LLC on November 27, 2019.  (ECF No. 1.)  In an Amended Complaint filed December 17, 2019, ArcelorMittal asserts the following claims: (I) breach of contract against Lapeer; (II) account stated against Lapeer; (III) unjust enrichment against Lapeer; (IV) breach of contract against Brentwood; (V) breach of contract against S&S; and, (VI) fraudulent transfer against Brentwood, Howmark, and 290 McCormick.  (ECF No. 18.)

Howmark filed a Third-Party Complaint against Schreiber and the Schreiber Trust on January 21, 2020, alleging: (I) breach of contract; (II) implied and/or equitable indemnity; (III) breach of fiduciary duty; and (IV) silent fraud.  (ECF No. 35.)

7

As noted earlier, the matter was stayed as to Lapeer after it filed for bankruptcy. (ECF No. 81.) A stipulated order dismissing ArcelorMittal's claim against 290 McCormick with prejudice was entered on October 29, 2020. (ECF No. 107.)

### III.   Thirty-Party Defendants' Motion for Summary Judgment

Schreiber and the Schreiber Trust seek summary judgment with respect to Howmark's third-party claims against them.

### A.   Breach of Contract (Count I)

Howmark alleges that Schreiber and the Schreiber Trust breached the Brentwood Operating Agreement by signing the Brentwood Guaranty without informing and obtaining consent from Howmark. (ECF No. 35 at Pg ID 1736, ¶¶ 23-25.) The Operating Agreement required Howmark's affirmative vote. (ECF No. 35-1 at Pg ID 1757, §§ 6.1, 6.2.) Maintaining that the transaction involved a conflict of interest as Schreiber controlled Lapeer, Howmark maintains that the Brentwood Guaranty required the approval of at least 85% of the units issued by Brentwood. (*Id.*)

Schreiber and the Schreiber Trust first argue that Howmark's breach of contract claim against them is barred by the applicable statute of limitations. They next argue that Schreiber is not individually liable because he was not a party to

the Brentwood Operating Agreement on which the breach of contract claim is based.

### i.     Statute of Limitations

Under Michigan law, which the parties agree applies to this action, the statute of limitations for a breach of contract claim is six years.  Mich. Comp. Laws § 600.5807(9).  Schreiber and the Schreiber Trust argue that Howmark's breach of contract claim is untimely.  Relying on Michigan law, which provides that a claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results[,]" Schreiber and the Schreiber Trust contend that Howmark's breach of contract claim accrued when Schreiber executed the Brentwood Guaranty on November 8, 2012.  (ECF No. 67 at Pg ID 1906-07 (citing Mich. Comp. Laws § 600.5827).)  They argue that because a plaintiff can prevail on a breach of contract claim even where the plaintiff has suffered only nominal damages (ECF No. 86 at Pg ID 2637-39 (citing cases)), Howmark's claim accrued before there was a demand on the guaranty.

The Michigan courts have "generally held that a cause of action for breach of contract accrues when the breach occurs, i.e., when the promisor fails to perform under the contract."  *Blazer Food, Inc. v. Rest. Properties, Inc.*, 673 N.W.2d 805, 809 (Mich. Ct. App. 2003) (citing cases); *see also Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v. Bakshi*, 771 N.W.2d 411, 417 (Mich. 2009) ("For a breach

9

of contract action, the limitations period generally begins to run on the date that the breach occurs.") Importantly, however, the Michigan Supreme Court "has held that the 'wrong' in [Michigan Compiled Law Section] 600.5827 is 'the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which [the] defendant breached his duty.'" *Frank v. Linkner*, 894 N.W.2d 574, 582 (Mich. 2017) (quoting *Moll v. Abbott Labs.*, 506 N.W.2d 816, 822 (Mich. 1993) (additional citations omitted)). Accordingly, although the plaintiff need not have suffered damages for a breach of contract claim to accrue, the plaintiff must have suffered an 'actionable harm.'" *Id*. at 584.

Howmark was not harmed when Schreiber signed the Brentwood Guaranty. Under Michigan law, a "guaranty" is "'an independent, collateral agreement by which the guarantor undertakes to pay the obligation *if* the primary payor fails to do so.'" *Mazur v. Young*, 507 F.3d 1013, 1019 (6th Cir. 2007) (italics modified and additional quotation marks and citation omitted) (quoting *First Nat'l Bank & Trust Co. of Ann Arbor v. Dolph*, 283 N.W. 35, 37-38 (Mich. 1938)). As such, any harm to Howmark arose only when Lapeer failed to pay ArcelorMittal and ArcelorMittal sought to enforce the guaranty and secure the amount due from Brentwood. *See In re Louise K.*, No. 345908, 2019 WL 5418343, at *6 (Mich. Ct. App. Oct. 22, 2019) (breach of contract claim on guaranty agreements accrued when demands to comply with the agreements were ignored); *Diversified Fin. Sys.,*

10

*Inc. v. Schanhals*, 513 N.W.2d 210, 211 (Mich. Ct. App. 1994) (providing that the limitations period began to run when the guarantors failed to tender the amount owed after promisor defaulted on its promissory note and a demand for payment was made); *Aiton v. Slater*, 299 N.W. 149, 155  (Mich. 1941) (action on guaranty agreement accrued only when it became due and payable).

Howmark's breach of contract claim is therefore not time barred.

### ii.    Individual Liability

Schreiber seeks summary judgment with respect to Howmark's breach of contract claim, arguing that only the Schreiber Trust was a party to the Brentwood Operating Agreement, not Schreiber individually.  (*See* ECF No. 67 at Pg ID 1909-10 (citing cases).)  However, a suit is authorized against a trustee for a contract entered into by the trust.  *See* Mich. Comp. Laws § 700.7910(3); *see also Church Joint Venture, LP v. Blasingame*, 947 F.3d 925, 935 (Sutton, J., concurring) (citations omitted) ("A trust lacks many characteristics of corporate personhood.  It normally can't sue or be sued in its own name.  Its trustees hold legal title to its assets."); Rest. 3d Trusts § 105 (2012) ("[A] third party may sue a trustee in the trustee's representative capacity on a contract entered into, or for a tort committed, by the trustee (or the trustee's agent or employee) in the course of trust administration.").

11

Schreiber therefore is not entitled to summary judgment based on this argument and Schreiber and the Schreiber Trust are not entitled to summary judgment on Howmark's breach of contract claim.

**B.    Breach of Fiduciary Duty**

Howmark alleges that Schreiber and the Schreiber Trust owed a fiduciary duty to Brentwood, which they breached by executing the Brentwood Guarantee. (ECF No. 35 ¶¶ 34-39.)  Schreiber and the Schreiber Trust argue that they are entitled to summary judgment with respect to this claim because Howmark was not a member of Brentwood when this lawsuit was filed.  Schreiber and the Schreiber Trust maintain that only Brentwood has standing to assert a breach of fiduciary duty claim pursuant to Michigan Compiled Section 450.4404 and, to the extent liability is sought pursuant to Michigan Compiled Laws Section 450.4515, former members lack standing to sue.[3]  Alternatively, Schreiber and the Schreiber Trust argue that the claim fails because Howmark has not identified any injury distinct from an injury suffered by Brentwood.

First, Schreiber and the Schreiber Trust cite the Michigan Court of Appeals' decision in *Frank v. Linker*, 871 N.W.2d 363, 369 (2015), to support their argument that any fiduciary duties that they owed under Michigan Compiled Laws

---

[3] Howmark does not argue in response that it has standing, as a former shareholder, to bring a shareholder oppression action under Michigan Compiled Laws Section 450.4515.

Section 450.4404 ran only to Brentwood and not its members.  (ECF No. 67 at Pg

ID 1911.)  In *Frank*, the court began by determining which of two provisions of the

Michigan Limited Liability Company Act applied to the plaintiffs' claims: Section

450.4404 (breach of fiduciary duty) or Section 450.4515 (member oppression).

*Frank*, 871 N.W.2d at 369.  The court concluded that Section 450.4404 did not

apply because "the duty [in that section] is owed to the company, not to individual

members[,]"and the plaintiffs asserted that the defendants owed fiduciary duties

directly to them *as members*.  *Id.*

Howmark points out in response that the court of appeals' decision in *Frank*

was reversed by the Michigan Supreme Court.  In fact, the decision was *affirmed*

*in part* and reversed in part.  *See Frank v. Linkner*, 894 N.W.2d 574 (Mich. 2017).

More significantly, the Michigan Supreme Court did not address whether a Section

450.4404 claim can be premised on an injury to a member because neither party

challenged the Michigan Court of Appeals' determination that such claims are

limited to injuries to the LLC.  *Id.* at 579 n.4.

Claims brought pursuant to Section 450.4404 generally are derivative

actions, which may be brought by current or former shareholders to redress wrongs

*to the corporation*.  *See Estes v. Idea Eng'g & Fabrications, Inc.*, 649 N.W.2d 84,

91-92 (Mich. Ct. App. 2002) (explaining the differences between the sections of

the Michigan Business Corporation Act that are analogous to Sections 450.4404

and Section 450.4515 of the Michigan Limited Liability Company Act)[4]; *see also Murphy v. Inman*, No. 2020 WL 2095942, at *2-3 (Mich. Ct. App. April 30, 2020) (relying on *Estes* to conclude that the "plaintiff could not bring a direct statutory claim under [the Michigan Business Corporation Act provision analogous to Section 450.4404] against defendants for breach of duties owed directly to the shareholder independent of the corporation").  However, there are two exceptions where a shareholder may bring a suit directly on his or her own behalf.  *Meathe v. Ret*, 547 F. App'x 683, 689 (6th Cir. 2013).  As the *Meathe* court summarized:

> An individual shareholder may bring a direct action (1) "when he has sustained a loss separate and distinct from that of other stockholders generally," *Christner v. Anderson, Nietzke & Co., P.C.*, 433 Mich. 1, 444 N.W.2d 779, 783 (1989); and (2) if the individual "can show a violation of a duty owed directly to the individual that is independent of the corporation," *Belle Isle Grill [Corp. v. Detroit*, 666 N.W. 271, 278 (Mich. Ct. App. 2003)].

*Meathe*, 547 F. App'x at 689.  "'The exception does not arise merely because the alleged violation resulted in injury to both the corporation and the individual; rather, it is limited to cases in which there is a breach of duty that is owed to the individual personally.'"  *Id.* (quoting *Belle Isle Grill*, 666 N.W.2d at 278-79).

---

[4] The Michigan courts interpret the State's Business Corporation Act and the Limited Liability Company Act in a consistent manner.  *Duray Dev. LLC v. Perrin*, 792 N.W.2d 749, 759 (Mich. Ct. App. 2010).

One example where the exception arose is *Christner*, where the Michigan Supreme Court held that a shareholder's injuries were "distinct" because all shareholders except the plaintiff received a distribution during liquidation. 444 N.W.2d at 783; *see also Young v. Vandermeer*, No. 349093, 2021 WL 744532, at *7 (Mich. Ct. App. Feb. 25, 2021) (concluding that the plaintiff had a direct claim against the defendant for breach of duty of good faith where the resulting loss to the corporation, due to the defendant directing revenue from the corporation to the defendant's separate business, "in effect prevented [the plaintiff] from having an equal share in the profits from [the redirected revenue]").

Howmark alleges that Schreiber and the Schreiber Trust breached the "duties of good faith, loyalty, and avoidance of self-dealing," which they owed to Howmark. (ECF No. 82 at Pg ID 2559 (quoting *Castle v. Shoham*, No. 337969, 2018 Mich. App. LEXIS 2975, at *35 (Mich. Ct. App. Aug. 7, 2018)); (ECF No. 35 ¶¶ 35-37); *see also* 51 Am. Jur. 2d Limited Liability Companies § 11 ("Managing members of a limited liability company (LLC) owe fiduciary duties to the LLC and its member investors; thus, a managing member must act with the utmost good faith and loyalty in managing the LLC."). Specifically, Howmark claims that Schreiber and the Schreiber Trust breached their fiduciary duties by signing the Brentwood Guaranty, which benefited Lapeer, without disclosing the conflict of interest and obtaining the required approval from Brentwood's

members.  (ECF No. 35 ¶ 38.)  Howmark suffered an injury separate and unique from Brentwood.  The alleged breach harmed Brentwood by pledging its assets to guarantee Lapeer's debt.  Howmark was distinctly injured because it unknowingly accepted potentially encumbered assets (i.e., property at 3255 John Conley Drive) in exchange for its interest in Brentwood.

For these reasons, the Court denies Schreiber and the Schreiber Trust's motion for summary judgment with respect to Howmark's breach of fiduciary duty claim.

### C.    Silent Fraud

"'Silent fraud is essentially the same as fraudulent misrepresentation except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation.'" *Tocco v. Richman Greer Prof'l Ass'n*, 553 F. App'x 473, 476 (6th Cir. 2013) (brackets omitted) (quoting *Alfieri v. Bertorelli*, 813 N.W.2d 772, 775 (Mich. Ct. App. 2012)).  A plaintiff alleging silent fraud must show:

> 1) a pre-existing legal or equitable duty to disclose, *see Hord v. Environmental Research Inst.*, 463 Mich. 399, 617 N.W.2d 543, 550 (2000); 2) suppression of information with the intent to defraud, *see U.S. Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 87-88 (1981); 3) reasonable reliance upon defendant's performance of the duty; and, 4) damages caused by the suppression of the information, *see Groening v. Opsata*, 323 Mich. 73, 34 N.W.2d 560, 564–65 (1948).

*Tocco*, 553 F. App'x at 476-77.  Schreiber and the Schreiber Trust seek summary judgment with respect to Howmark's silent fraud claim, arguing that they had no duty to disclose information regarding the Brentwood Guaranty.

As established earlier, a member in a member-managed LLC owes fiduciary duties to the LLC's other members.  For example, the Michigan Court of Appeals has acknowledged that a "managing member of [a] limited liability company owe[s] a] fiduciary duty to [a] co-member to disclose all material facts before purchasing the co-member's interest in the company."  *Dawson v. DeLisle*, No. 283195, 2009 WL 2168887, at \*4 (July 21, 2009) (citing *Salm v. Feldstein*, 799 N.Y.S.2d 104, 105-06 (N.Y. App. Div. 2005); *see also Glidden v. Jandernoa*, 173 F.R.D. 459, 477 (W.D. Mich. 1997) (explaining that managers owe an "uncompromising duty of loyalty" to corporate shareholders, which "also imposes upon officers and directors an unremitting obligation of candor and disclosure.") (citation and internal quotation marks omitted); *DC Mex Holdings, LLC v. Affordable Land, LLC*, No. 318791, 2015 WL 2090646, at \*6 (Mich. Ct. App. May 5, 2015) (affirming grant of summary disposition in favor of the plaintiff on its silent fraud claim based on the defendant's failure to disclose relevant information).  As such, Schreiber and the Schreiber Trust did have a fiduciary duty—in addition to a contractual duty under the Brentwood Operating Agreement—to disclose the

17

Brentwood Guaranty to Howmark.  They are not entitled to summary judgment on this claim.

### D.    Implied and/or Equitable Indemnity

In Count II of its Third-Party Complaint, Howmark seeks indemnification from Schreiber and the Schreiber Trust for any losses Howmark incurs or damages it suffers defending against ArcelorMittal's claim.  Howmark seeks indemnification pursuant to the terms of the Brentwood Operating Agreement and/or common law indemnity.  Schreiber and the Schreiber Trust argue that no provision in the operating agreement requires one member of the LLC to indemnify another.  Because Schreiber and the Schreiber Trust maintain that they owe no fiduciary duties to Howmark, they argue that no equitable claim for indemnity is appropriate.

The "Member Indemnification" section of the Brentwood Operating Agreement does not impose a duty on one member to another member.  (ECF No. 35-1 at Pg ID 1759, § 8.2.)  However, the liability section does provide for one member's liability to another "*for any loss* resulting from any action or inaction by a Member," if such action or inaction was not taken in good faith and constitutes willful misconduct or gross negligence.  (*Id*., § 8.1.)  The plain language of the agreement suggests that Schreiber and the Schreiber Trust are liable for "any loss"

Howmark incurs if the execution of the Brentwood Guaranty is found to have been in bad faith and willful or grossly negligent.

Common-law indemnity, in comparison, "rests upon the equitable principle of a right to restitution.  The theory of indemnity is that where the wrongful act of one results in liability being imposed on another, the innocent party may have indemnity from the person actually guilty of the wrong."  *Peeples v. City of Detroit*, 297 N.W.2d 839, 841 (Mich. Ct. App. 1980) (citation omitted); *see also Fishbach-Natkin, Inc. v. Shimizu Am. Corp.*, 854 F. Supp. 1294, 1300 (E.D. Mich. 1994) (citing Michigan law).  There must be "'a special relationship between the parties or a course of conduct whereby one party undertakes to perform a certain service and impliedly assures indemnification.'"  *Fishbach-Natkin*, 854 F. Supp. at 1300 (quoting *Skinner v. D-M-E Corp.*, 335 N.W.2d 90, 92 (Mich. Ct. App. 1983)).

The Court has concluded that Schreiber and the Schreiber Trust owed a fiduciary duty to Howmark.  For these reasons, Schreiber and the Schreiber Trust do not set forth a basis to dispose of Howmark's indemnity claim.

## IV.   ArcelorMittal's Motion for Partial Summary Judgment Against Brentwood & S&S

ArcelorMittal seek summary judgment with respect to their breach of contract claims against Brentwood and S&S, only.  ArcelorMittal argues that there is no genuine issue of material fact that Brentwood and S&S entered into valid and

binding guaranties promising to promptly pay the amounts due from Lapeer upon Lapeer's default.  Further, the Guaranties require Brentwood and S&S to pay interest on the amount due and reimburse ArcelorMittal for its collection costs, including attorneys' fees.

Neither Brentwood nor S&S dispute that Lapeer is in default or that they are obligated to pay the balance due for the goods Lapeer purchased, as well as interest and ArcelorMittal's collection costs.  (*See* ECF No. 89-3 at Pg ID 2768, Resp. No. 3; *see also* ECF No. 108-11; ECF No. 111 at Pg ID 3779, 3784.)  Brentwood and S&S dispute the amounts owed, however, asserting that the parties are still conducting discovery on the issue.  But Brentwood and S&S do not indicate what additional discovery is needed and they do not comply with the requirements of Federal Rule of Civil Procedure 56(d) to evade summary judgment based on the unavailability of essential facts.

While Howmark no longer holds an interest in Brentwood, it filed a response to ArcelorMittal's summary judgment motion, challenging the enforceability of the Brentwood Guaranty.[5]  ArcelorMittal argues that Howmark has no basis to oppose

---

[5] In its response brief, Howmark also contends that summary judgment is premature because discovery remains open; however, like Brentwood and S&S, Howmark fails to satisfy the requirements of Rule 56(d) to evade summary judgment due to the need for additional essential facts.  *See* Fed. R. Civ. P. 56(d). Howmark also requests summary judgment in its favor on ArcelorMittal's fraudulent transfer claim.  (*See* ECF No. 113 at Pg ID 3802-03.)  This request is procedurally defective.  *See* R5(f) E.D. Mich. Electronic Filing Policies and

the motion and contradict Brentwood's concession of liability, given that

Howmark is not and was never a party to the Guaranties, is no longer a member of

Brentwood and therefore does not control its business decisions, and does not have

a cross-claim against Brentwood or S&S.  (ECF No. 115 at Pg ID 3874-75.)  To

support its argument, Howmark cites several cases where courts held that, in the

absence of a cross-claim, a co-defendant lacks standing to oppose a co-defendant's

motion for summary judgment.  (*Id.* at Pg ID 3874 n.3.)

None of the cases cited by Howmark—nor located in the Court's own

research—address a co-defendant's "standing" to respond to a dispositive motion

filed by the plaintiff as opposed to a co-defendant.  In any event, federal district

courts are divided on whether an opposing-co-defendant can prevent the court from

granting summary judgment to a moving-co-defendant on the plaintiff's claims

when the plaintiff offers no opposition.  Many courts, like those cited by

ArcelorMittal, hold that a co-defendant may not oppose another co-defendant's

motion in the absence of a cross-claim.  *See, e.g., Fraioli v. Lemcke*, 328 F. Supp.

2d 250, 263 n.4 (D.R.I. 2004); *Rosenbaum v. Freight, Lime & Sand Hauling, Inc.*,

No. 2:10-cv-287, 2012 WL 4832248, at *2-3 (N.D. Ind. Oct. 10, 2012) (collecting

cases); *Eckert v. City of Sacramento*, No. 07-cv-00825, 2009 WL 3211278, at *3

---

Procedures ("Motions must not be combined with any other stand-alone document.
… A counter-motion must not be combined with a response or reply.").

(E.D. Cal. Sept. 30, 2009) (citing *Blonder v. Casco Inn Residential Care, Inc.*, No. CIV. 99-274, 2000 WL 761895, *1 (D. Me. May 4, 2000)).  Other courts will consider a co-defendant's opposition to another defendant's motion.  *See, e.g., Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, 205 F. Supp. 3d 1105, 1109 (C.D. Cal. 2016); *Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634, 640 (W.D. Tex. 2006); *Coleman v. Anco Insulations, Inc.*, 196 F. Supp. 3d 608, 610 (M.D. La. 2016); *D.F. by & through Amador v. Sikorsky Aircraft Corp.*, No. 3:13-cv-00331, 2017 WL 4922814, at *12 (S.D. Cal. Oct. 30, 2017) (citing *Stone v. Marten Transport, LLC*, No. 3:12-cv-0396, 2014 WL 1666420, at *3-5 (M.D. Tenn. Apr. 25, 2014)); *Dailey v. J.B. Call & Co.*, No. 04-4114, 2006 WL 616634, at *2 (D. Kan. Mar. 9, 2006).  Those courts willing to consider a co-defendant's opposition often rely on that party's stake in the outcome.  *See, e.g., Stone*, 2014 WL 1666420, at *3 ("In a comparative fault jurisdiction …, a defendant has a stake in whether another entity will be listed on the verdict form, because that other entity (whether or not a party at trial) could be held liable for some measure of the plaintiff's damages, thereby relieving the defendant from being allocated that percentage of liability."); *Wood v. Millar*, No. CIV 13-0923, 2015 WL 12661926, at *4 (D.N.M. Feb. 19, 2015) ("[T]he better rule allows defendants to oppose motions for summary judgment if they could be aggrieved by the outcome of the decision.").

Howmark may be aggrieved if ArcelorMittal prevails in establishing that the Brentwood Guaranty is binding because, absent the guaranty, there would be no basis for ArcelorMittal to claim an interest in the property Brentwood transferred to Howmark.  The Court therefore will consider Howmark's opposition to ArcelorMittal's motion.

Howmark first argues that the Brentwood Guaranty is not binding because Schreiber signed it personally, rather than as trustee of the Schreiber Trust. Second, Howmark contends that Schreiber did not have actual or apparent authority to sign the guaranty on Brentwood's behalf.

## A.    Schreiber's Signature

Nothing about the way Schreiber signed the Brentwood Guaranty suggests that he was signing individually, as opposed to as trustee of the Schreiber Trust. (*See* ECF No. 18-4 at Pg ID 1093; ECF No. 35-1 at Pg ID 1761.)  In fact, below Schreiber's signature line on the Brentwood Guaranty, it reads:

> Of Signer: Brentwood Advisory Group, LLC.
> Title: Member

(ECF No. 18-4 at Pg ID 1093.)  The Schreiber Trust, not Schreiber, was the member of Brentwood.  Thus, the document reflects that Schreiber was signing for the Schreiber Trust.

## B.    Schreiber's Actual Authority

23

The Michigan Limited Liability Act provides that LLCs are managed by their members, "subject to any provision in an operating agreement restricting or enlarging the management rights and duties of any member or group of members[,]" and that "members are considered managers for purposes of applying th[e] act, including section 406 regarding the agency authority of managers, unless the context clearly requires otherwise."  Mich. Comp. Laws § 450.4401. Brentwood, according to its Operating Agreement, was managed by its members. (ECF No. 35-1 at Pg ID 1746, § 2.2.)  According to the Michigan Limited Liability Act, a manager of a limited liability company "is an agent" of the company and his or her acts typically bind the company:

> A manager is an agent of the limited liability company for the purpose of its business, and the act of a manager, including the execution in the limited liability company name of any instrument, that apparently carries on in the usual way the business of the limited liability company of which the manager is a manager binds the limited liability company, unless *both* of the following apply:
>
> (a) The manager does not have the authority to act for the limited liability company in that particular matter.
>
> (b) The person with whom the manager is dealing has actual knowledge that the manager lacks authority to act or the articles of organization or this act establishes that the manager lacks authority to act.

Mich. Comp. Laws § 450.4406 (emphasis added).

Howmark offers two reasons why Schreiber lacked the actual authority to bind Brentwood to the Brentwood Guaranty.  First, Howmark argues that Schreiber was not carrying on the usual business of the LLC (i.e., purchasing, holding, maintaining, improving, and selling real estate).  Second, the Brentwood Operating Agreement established that Schreiber lacked the authority to act.

The Court finds a genuine issue of material fact with respect to whether Schreiber was carrying on the usual business of Brentwood.  ArcelorMittal presents evidence suggesting that the related entities (Lapeer, Howmark, S&S, Marvin Engineering Company) were intertwined and controlled by one individual, Gerald Friedman.  (*See* ECF No. 115-2 at 30-31, 56; ECF No. 115-3, ECF No. 115-4 at Pg ID 3900.)  For example, ArcelorMittal presents evidence reflecting that Friedman, although not a member or manager of Brentwood, executed a lease on its behalf.  (ECF No. 115-3 at Pg ID 3897.)  Thus, it may not have been beyond Brentwood's business to guaranty the debts of Lapeer.

Nevertheless, the Brentwood Operating Agreement expressly precluded Schreiber from signing the guarantee, which pledged assets of the LLC, without first obtaining the approval of at least 50% of the units held by the members.  (*See* ECF No. 35-1 at Pg ID 1757, §§ 6.1, 6.2.)  The record does not reflect that such a vote was taken.

25

Accordingly, it does not appear that Schreiber had the actual authority to bind Brentwood to the Brentwood Guaranty.

## B.    Schreiber's Apparent Authority

An agent may bind the principal if the agent had the implied or apparent authority to act.  As the Michigan Court of Appeals has described these principles:

> Implied authority is the authority that an agent believes the agent possesses.  [*Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. Ct. App. 1992)].  Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship exists.  However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent.

*Alar v. Mercy Mem'l Hosp.*, 529 N.W.2d 318, 323 (Mich. Ct. App. 1995).  When deciding whether an agent possessed the implied or apparent authority to act, "the court must look to all surrounding facts and circumstances."  *Meretta*, 491 N.W. 2d at 280 (citation omitted).  The relevant question "is whether an ordinarily prudent person … would be justified in assuming [the agent] had the authority to [act]."  *Id.*

ArcelorMittal makes several factual assertions in its "reply" to Howmark's response that suggest Schreiber possessed the apparent authority to bind Brentwood to the Brentwood Guaranty.[6]  (*See* ECF No. 115 at Pg DI 3875-78.) The problem the Court finds, however, is that ArcelorMittal does not point the

---

[6] ArcelorMittal does not discuss Schreiber's implied authority by name, although it does describe circumstances that one could argue implied to ArcelorMittal that Schreiber had the authority to sign the Guaranties.

Court to record evidence supporting many of these assertions.  (*See, e.g., id.* at Pg ID 3876 "Howmark gave Schreiber and Friedman (a non-member) carte blanche to operate Brentwood and S&S for Lapeer's benefit."); (*Id.* at Pg ID 3877 ("Brentwood and S&S placed Mr. Schreiber in a position that would lead others, including ArcelorMittal, to believe that he had authority to execute the Guaranties").)  Where ArcelorMittal does cite to supporting evidence, the material is insufficiently developed to convince the Court that there is an absence of a genuine issue of material fact.[7]

The Court is not holding that Schreiber lacked the apparent authority to bind Brentwood.  In fact, the evidence ArcelorMittal offers hints that Brentwood cloaked Schreiber with the authority to act unilaterally on its behalf.  But the Court is not convinced at this time based on the current record.

## V.     Conclusion

For the reasons set forth above, the Court holds that Schreiber and the Schreiber Trust are not entitled to summary judgment with respect to Howmark's claims against them.  ArcelorMittal is not entitled to summary judgment with respect to its breach of contract claims against Brentwood and S&S.

---

[7] This is one of the reasons why the Court prefers complete deposition transcripts when deposition testimony is cited.  *See, e.g.*, Practice Guidelines, Motion Practice, ¶ B.1 at *http://www.mied.uscourts.gov* (requiring sufficient accompanying pages of the transcript when citing deposition testimony and stating a preference for full transcripts)

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment by Daniel C.

Schreiber Revocable Trust Dated 4/11/01 and Daniel C. Schreiber (ECF No. 67) is

**DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary

Judgment against Defendants Brentwood Advisory Group, LLC and S&S

Holdings, LLC (ECF NO. 108) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 11, 2021